# EXHIBIT D

Received and E-Filed for Record
4/28/2020 8:32 AM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Charlotte Forbes

CAUSE NO.   20-04-05014

| | | |
|---|---|---|
| KENNETH DIXON, | § | IN THE JUDICIAL COURT OF |
| | § | |
| *Plaintiff,* | § | Montgomery County - 410th Judicial District Court |
| | § | |
| V. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| ALLSTATE TEXAS LLOYDS AND | § | |
| MICHAEL BRAD OSBORN, | § | |
| | § | |
| *Defendant.* | § | _____ DISTRICT COURT |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Kenneth Dixon, ("Plaintiff"), and files **Plaintiff's Original Petition, Jury Demand, and Request for Disclosure,** complaining of Allstate Texas Lloyds ("Allstate") and Michael Brad Osborn ("Osborn") (or collectively "Defendants") and for cause of action, Plaintiff respectfully shows the following:

### DISCOVERY CONTROL PLAN

1.   Plaintiff intends to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4 and 169.

### PARTIES

2.   Plaintiff, Kenneth Dixon, resides in Montgomery County, Texas.

3.   Defendant, Allstate Texas Lloyds, is a Texas insurance company, engaged in the business of insurance in the State of Texas. Plaintiff requests service of citation upon Allstate Texas Lloyds, through its registered agent for service listed with the Texas Department of Insurance: **c/o C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas**

**75201-3136**. Plaintiff requests service at this time.

4.     Defendant Michael Brad Osborn is an individual resident of Aubrey, Texas. Osborn may be served with citation at the address listed with the Texas Department of Insurance: **8400 Bonanza Street, Aubrey Texas 76227**. Plaintiff requests service at this time.

## JURISDICTION

5.     The Court has jurisdiction over Allstate Texas Lloyds because this Defendant engages in the business of insurance in the State of Texas, and the causes of action arise out of Allstate's business activities in the state, including those in Montgomery County, Texas, with reference to this specific case.

6.     The Court has jurisdiction over Osborn because this Defendant engages in the business of adjusting insurance claims in the State of Texas, and the causes of action arise out of this Defendant's business activities in the State of Texas, including those in Montgomery County, Texas, with reference to this specific case.

## VENUE

7.     Venue is proper in Montgomery County, Texas because the insured property is located in Montgomery County, Texas, and all or a substantial part of the events giving rise to this lawsuit occurred in Montgomery County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.032.

## FACTS

8.     Plaintiff asserts claims for breach of contract, common law bad faith, fraud, negligence, gross negligence, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.

2

9.    Plaintiff owns an Allstate Texas Lloyds insurance policy, number 000936767166 ("the Policy"). At all relevant times, Plaintiff owned the insured premises located at 16279 Long Valley Court Conroe, Texas 77302 ("the Property").

10.   Allstate Texas Lloyds or its agent sold the Policy, insuring the Property, to Plaintiff. Allstate Texas Lloyds represented to Plaintiff that the Policy included hail and windstorm on or about May 9, 2019, the Property sustained extensive damage resulting from a severe storm that passed through the Conroe/Montgomery County, Texas area.

11.   In the aftermath of the hail and windstorm, Plaintiff submitted a claim to Allstate against the Policy for damage to the Property. Allstate assigned claim number 0549259083 to Plaintiff's claim.

12.   Plaintiff asked Allstate to cover the cost of damage to the Property pursuant to the Policy.

13.   Allstate hired or assigned its agent, Osborn, to inspect and adjust the claim. Osborn conducted an inspection on or about June 19, 2019, according to the information contained in Osborn's estimate.  Osborn's findings generated an estimate of damages totaling $1,472.32. After application of depreciation and $1,740.00 deductible, Plaintiff was left without adequate funds to make repairs on the entirety of his claim.

14.   Allstate, through its agent, Osborn, conducted a substandard and improper inspection of the Property, which grossly undervalued the cost of repairs in its estimate and yielded an unrealistic amount to underpay coverage.

15.   Allstate and Osborn have ultimately refused full coverage which includes, but is not limited to, replacement of the roof and additional exterior damage. Specifically, Osborn found damage to only three composite shingles on Plaintiff's roof. The third-party inspector hired

3

to review the damage to the Property found damage to the shingles to Plaintiff's roof. In addition, the third-party inspector found damage to ridge cap, valley metal, drip edge, roof vent, flashing, and roof sheathing that were completely absent from Osborn's estimate. The storm compromised the integrity of the roof allowing water to travel into and cause damage to the main level of the home in the living room and master bedroom.

16.    The damage to Plaintiff's Property is currently estimated at $22,755.94.

17.    Osborn had a vested interest in undervaluing the claims assigned to him by Allstate in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of the third-party inspector's as well as the difference in valuation is evidence of unfair claims handling practices on the part of Osborn.

18.    Furthermore, Osborn was aware of Plaintiff's deductible prior to inspecting the Property. Osborn had advanced knowledge of the damages he needed to document in order to be able to deny the claim.

19.    Osborn misrepresented the actual amount of damage Plaintiff's Property sustained in addition to how much it would cost to repair the damage. Osborn made these misrepresentations as a licensed Texas adjuster with the hope that Plaintiff would rely on his expertise and accept the bad faith estimate as a true representation of the damages.

20.    After reviewing Plaintiff's Policy, Osborn misrepresented that the damage was caused by non-covered perils. Osborn used his expertise to fabricate plausible explanations for why visible damage to Plaintiff's Property would not be covered under the policy.

21.    As stated above, Allstate and Osborn improperly and unreasonably adjusted Plaintiff's claim. Without limitation, Allstate and Osborn misrepresented the cause of, scope of, and

4

cost to repair damages to Plaintiff's Property, as well as the amount of insurance coverage for Plaintiff's claim or loss under the Policy.

22. Allstate and Osborn made these and other false representations to Plaintiff, either knowingly or recklessly, as a positive assertion, without knowledge of the truth. Allstate and Osborn made these false representations with the intent that Plaintiff act in accordance with the misrepresentations regarding the grossly deficient damage and repair estimates prepared Osborn.

23. Plaintiff relied on Allstate and Osborn's misrepresentations, including but not limited to those regarding coverage, the cause of, scope of, and cost to repair the damage to Plaintiff's Property. Plaintiff's damages are the result of Plaintiff's reliance on these misrepresentations.

24. Upon receipt of the inspection and estimate reports from Osborn, Allstate failed to assess the claim thoroughly. Based upon Osborn's grossly unreasonable, intentional, and reckless failure to investigate the claim properly prior to underpaying coverage, Allstate failed to provide coverage due under the Policy, and Plaintiff suffered damages.

25. Because Allstate and Osborn failed to provide coverage for Plaintiff's insurance claim, Plaintiff has been unable to complete any substantive repairs to the Property. This has caused additional damage to Plaintiff's Property.

26. Furthermore, Allstate and Osborn failed to perform their contractual duties to Plaintiff under the terms of the Policy. Specifically, Osborn performed an unreasonable and substandard inspection that allowed Allstate to refuse to pay full proceeds due under the Policy, although due demand was made for an amount sufficient to cover the damaged

5

Property, and all conditions precedent to recover upon the Policy were carried out by Plaintiff.

27.   Allstate's and Osborn's misrepresentations, unreasonable delays, and continued denials constitute a breach of the statutory obligations under Chapters 541·and 542 of the Texas Insurance Code. Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between Defendant and Plaintiff.

28.   Allstate's and Osborn's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a) (1). Allstate and Osborn have failed to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy. Specifically, Allstate and Osborn have failed to, in an honest and fair manner, balance their own interests in maximizing gains and limiting disbursements, with the interests of Plaintiff by failing to timely pay Plaintiff coverage due under the Policy.

29.   Allstate's and Osborn's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a) (2) (A). Allstate and Osborn failed to provide Plaintiff a reasonable explanation for underpayment of the claim.

30.   Additionally, after Allstate received statutory demand on or about 02/21/2020, Allstate has not communicated that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for failing to settle Plaintiff's claim properly.

31.   Allstate's and Osborn's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a) (4). Osborn performed a biased and

6.

intentionally substandard inspection designed to allow Allstate to refuse to provide full coverage to Plaintiff under the Policy.

32. Specifically, Allstate and Osborn performed an outcome-oriented investigation of Plaintiff's claims, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property.

33. Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055. Due to Osborn subpar inspection, Allstate failed to reasonably accept or deny Plaintiff's full and entire claim within the statutorily mandated time after receiving all necessary information.

34. Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056. Due to Osborn's intentional undervaluation of Plaintiff's claims, Allstate failed to meet its obligations under the Texas Insurance Code regarding timely payment of the claim. Specifically, Osborn's understatement of the damage to the Property caused Allstate to delay full payment of Plaintiff's claim longer than allowed, and Plaintiff has not received rightful payment for Plaintiff's claim.

35. Allstate and Osborn's wrongful acts and omissions have forced Plaintiff to retain the professional services of the attorneys and law firm representing him with respect to these causes of action.

## CAUSES OF ACTION AGAINST DEFENDANT
## ALLSTATE TEXAS LLOYDS

36. All paragraphs from the fact section of this petition are hereby incorporated into this section.

## BREACH OF CONTRACT

7

37.     Allstate is liable to Plaintiff for intentional violations of the Texas Insurance Code, and
        intentional breach of the common law duty of good faith and fair dealing. It follows, then,
        that the breach of the statutory duties constitutes the foundation of an intentional breach of
        the insurance contract between Allstate and Plaintiff.

38.     Allstate's failure and/or refusal to pay adequate coverage as obligated under the Policy,
        and under the laws of the State of Texas, constitutes a breach of Allstate's insurance
        contract with Plaintiff.

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

39.     Allstate's conduct constitutes multiple violations of the Texas Insurance Code, Unfair
        Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are
        actionable by TEX. INS. CODE §541.151.

40.     Allstate's unfair settlement practice of misrepresenting to Plaintiff material facts relating
        to coverage constitutes an unfair method of competition and a deceptive act or practice in
        the business of insurance. TEX. INS. CODE §541.060(a) (1).

41.     Allstate's unfair settlement practice of failing to attempt in good faith to make a prompt,
        fair, and equitable settlement of the claim, even though Allstate's liability under the Policy
        was reasonably clear, constitutes an unfair method of competition and a deceptive act or
        practice in the business of insurance. TEX. INS. CODE §541.060(a) (2) (A).

42.     Allstate's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable
        explanation of the basis in the Policy, in relation to the facts or applicable law, for
        underpayment and denial of the claim, constitutes an unfair method of competition and a
        deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (3).

8

43. Allstate's unfair settlement practice of refusing to pay Plaintiff's full claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a) (7).

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

44. Allstate's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are actionable under TEX. INS. CODE §542.060.

45. Allstate's delay in paying Plaintiff's claim following receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

46. Allstate's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts.

47. Allstate's failure to adequately and reasonably investigate and evaluate Plaintiff's claim, even though Allstate knew or should have known by the exercise of reasonable diligence that liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## DTPA VIOLATIONS

48. Allstate's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63. Plaintiff is a consumer of goods and services provided by Allstate pursuant to the DTPA. Plaintiff has met all conditions

9

precedent to bring this cause of action against Allstate. Specifically, Allstate's violations of the DTPA include, without limitation, the following matters:

A.     By its acts, omissions, failures, and conduct, Allstate has violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. Allstate's violations include, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.     Allstate represented to Plaintiff that the Policy and Allstate's adjusting agent and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.     Allstate represented to Plaintiff that Allstate's Policy and adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.     Allstate advertised the Policy and adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.

E.     Allstate breached an express warranty that the damages caused by wind and hail would be covered under the Policy. This breach entitles Plaintiff to recover under sections 17.46(b) (12) and (20) and 17.50(a) (2) of the DTPA.

F.     Allstate's actions are unconscionable in that Allstate took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Allstate's

10

unconscionable conduct gives Plaintiff a right to relief under section 17.50(a) (3) of the DTPA; and

G.   Allstate's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

49.   Each of the above-described acts, omissions, and failures of Allstate is a producing cause of Plaintiff's damages. All of Allstate's acts, omissions, and failures were committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade Practices Act.

## FRAUD

50.   All allegations above are incorporated herein.

51.   Allstate is liable to Plaintiff for common law fraud.

52.   Each and every misrepresentation described above concerned material facts that absent such representations, Plaintiff would not have acted as Plaintiff did, and Allstate knew its representations were false or made recklessly without any knowledge of their truth as a positive assertion.

53.   Allstate made the statements intending that Plaintiffs act upon them. Plaintiff then acted in reliance upon the statements, thereby causing Plaintiff to suffer injury constituting common law fraud.

## CAUSES OF ACTION AGAINST DEFENDANT MICHAEL BRAD OSBORN

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

54.   All allegations above are incorporated herein.

11

55. Osborn's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act. TEX. INS. CODE §541.060(a).

56. Osborn is individually liable for his unfair and deceptive acts, irrespective of the fact that he was acting on behalf of Allstate, because Osborn is a "person," as defined by TEX. INS. CODE §541.002(2).

57. Osborn knowingly underestimated the amount of damage to the Property. As such, Osborn failed to adopt and implement reasonable standards for the investigation of the claim arising under the Policy. TEX. INS. CODE §542.003(3).

58. Furthermore, Osborn did not attempt in good faith to affect a fair, prompt, and equitable settlement of the claim. TEX. INS. CODE §542.003(4).

59. Osborn's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for partial denial of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice. TEX. INS. CODE §541.060(a)(3).

60. Osborn's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

61. All allegations above are incorporated herein.

62. Osborn's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63. Plaintiff is a consumer of goods

12

and services provided by Osborn pursuant to the DTPA. Plaintiff has met all conditions precedent to bringing this cause of action against Osborn. Specifically, Osborn's violations of the DTPA include the following matters:

A.  By this Defendant's acts, omissions, failures, and conduct, Osborn has violated sections 17.46(b)(2), (5), and (7) of the DTPA. Osborn's violations include, (1) failure to give Plaintiff the benefit of the doubt, and (2) failure to write up an estimate reflecting the proper repair of Plaintiff's Property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.  Osborn represented to Plaintiff that the Policy and his adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.  Osborn represented to Plaintiff that the Policy and his adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.  Osborn's actions are unconscionable in that Osborn took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Osborn's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a)(3) of the DTPA; and

E.  Osborn's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

13

63. Each of Osborn's above-described acts, omissions, and failures is a producing cause of Plaintiff's damages. All acts, omissions, and failures were committed "knowingly" and "intentionally" by Osborn, as defined by the Texas Deceptive Trade Practices Act. TEX. BUS. & COM. CODE 17.45.

## FRAUD

64. All allegations above are incorporated herein.

65. Allstate assigned or hired Osborn to adjust the claim.

   a. Osborn had a vested interest in undervaluing the claims assigned to him by Allstate in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of Plaintiffs' public adjuster's is evidence of fraud on the part of Osborn. The valuation of damages that were included in Osborn's report compared to Plaintiff's public adjuster's is also evidence of fraud on the part of Osborn.

   b. Furthermore, Osborn was aware of Plaintiff's deductible before even visiting the Property to conduct the inspection. Osborn had advanced knowledge of what amount of damages he needed to find in order to either deny the claim or find the claim below the deductible.

   c. Osborn made misrepresentations as to the amount of damage Plaintiff's Property sustained as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiff's property:

   d. Osborn made further misrepresentations to Plaintiff during his inspection. Osborn used his expertise to fabricate plausible explanations for why visible damage to

14

Plaintiff's Property would not be covered under the policy. Such misrepresentations include damage to the Property owing from wear and tear, age, and damage of a type not consistent with the type of claim that was made.

## NEGLIGENCE

66. All allegations above are incorporated herein.

67. Osborn was negligent in his actions with regard to his adjusting of Plaintiff's claim and violated the standard of care for an insurance adjuster licensed in the state of Texas. Those failures include one or more of the following acts or omissions:

    a. Failure to conduct a reasonable inspection;

    b. Failure to include covered damage that would be discovered as a result of reasonable inspection;

    c. Failure to identify the proper cause and scope of the damage to Plaintiff's Property;

    d. Failure to identify the cost of proper repairs to Plaintiff's Property; and

    e. Failure to communicate to Plaintiff the reasons for specific determinations made regarding the inclusion or exclusion of damage to Plaintiff's Property.

68. Osborn's acts and/or omissions constitute negligence. His conduct was therefore a proximate cause of the damages sustained by Plaintiff.

69. At all relevant times, Osborn was an agent or employee of Defendant Allstate.

70. Osborn's unreasonable inspection was performed within the course and scope of his duties with Defendant Allstate. Therefore, Allstate is also liable for the negligence of Osborn through the doctrine of *respondeat superior.*

## GROSS NEGLIGENCE

15

71. All allegations above are incorporated herein.

72. Osborn's actions or omissions constitute gross negligence as defined in TEX. CIV. P. & REM. CODE § 41.001 (11)(A) and (B):

    a. Osborn's actions, when viewed objectively from the standpoint of the actor at the time of their occurrence involves an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff; and

    b. Osborn had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, and/or welfare of Plaintiff.

73. Osborn any intentionally misrepresented the scope and amount of damages on the estimate prepared for Plaintiffs' Property on behalf of Allstate. His estimate was to such an extreme degree below what another licensed adjuster would have done in this situation (as evidenced by the Plaintiffs' third-party inspector's estimate); it was also in complete disregard for the risk and harm Plaintiffs would suffer if the actual damages to the Property were allowed to persist unrepaired.

## KNOWLEDGE

74. Defendants made each of the acts described above, together and singularly, "knowingly," as defined in the Texas Insurance Code, and each was a producing cause of Plaintiff's damages described herein.

## WAIVER AND ESTOPPEL

75. Defendants waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to

16

Plaintiff.

## DAMAGES

76.    The damages caused to the Property have not been properly addressed or repaired since the claim was made, causing further damage to the Property, and undue hardship and burden to Plaintiff. These damages are a direct result of Defendant's mishandling of Plaintiff's claims in violation of the laws set forth above.

77.    Plaintiff currently estimates that actual damages to the Property under the Policy are $22,755.94.

78.    Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained. The above described acts, omissions, failures, and conduct of Defendant has caused Plaintiff's damages, which include, without limitation, the cost to properly repair Plaintiff's Property and any investigative and engineering fees incurred.

79.    For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of his claims, consequential damages, together with attorney's fees.

80.    For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of benefits owed pursuant to the Policy, mental anguish, court costs, and attorney's fees. For knowing and intentional conduct of the acts described above, Plaintiff asks for three (3) times his actual damages. TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(b) (1).

81.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of his claims, plus a per annum interest penalty on those claims, as

17

damages, as well as pre-judgment interest and reasonable attorney's fees.   TEX. INS. CODE §542.060.

82.    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of duty, such as additional costs, economic hardship, losses due to the nonpayment of the amount Allstate owed, exemplary damages, and damages for emotional distress.

83.    Defendant's breach of the common law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiff's rights and welfare, and with "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies Code. These violations are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount determined by the finder of fact sufficient to punish Defendants for their wrongful conduct, and to set an example to deter Defendants and others from committing similar acts in the future.

84.    For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys subscribed to this pleading. Therefore, under Chapter 38 of the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

85.    As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As

required by Rule 47(c)(4) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks only monetary relief of no less than $100,000.00, but no more than $200,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. A jury will ultimately determine the monetary relief actually awarded, however. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

## REQUESTS FOR DISCLOSURE

86.    Under Texas Rules of Civil Procedure 190 and 194, Plaintiff requests that Defendants disclose, within fifty (50) days from the date this request is served, the information or material described in Rules 190.2(b)(6) and 194.2.

## JURY DEMAND

87.    Plaintiff hereby requests a jury trial for all causes of action alleged herein, tried before a jury consisting of citizens residing in Montgomery County, Texas. Plaintiff hereby tenders the appropriate jury fee.

## PRAYER

Plaintiff prays that Defendants, Allstate Texas Lloyds and Michael Brad Osborn, be cited and served to appear, and that upon trial hereof and Plaintiff recovers from Defendants, Allstate Texas Lloyds and Michael Brad Osborn such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, as to actual, consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended

19

on Plaintiff's behalf, for pre-judgment and post-judgment interest as allowed by law; and for any other relief, at law or in equity, to which Plaintiff may show himself justly entitled.

DATED: April 28, 2020

Respectfully submitted,

By: /s/ *Chad T. Wilson*

Chad T. Wilson
Bar No. 24079587
Tara L. Peveto
Bar No. 24076621
CHAD T. WILSON LAW FIRM PLLC
455 E Medical Center Blvd, Ste 555
Webster, Texas 77598
Telephone: (832) 415-1432
eservice@cwilsonlaw.com

ATTORNEYS FOR PLAINTIFF

20